FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 16, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FELICIA C., | NO: 1:18-CV-03051-FVS |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 19. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Leisa A. Wolf. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 14, is granted and Defendant's Motion, ECF No. 19, is denied.

ORDER ~ 1

# JURISDICTION

Plaintiff Felicia C.[1] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on December 16, 2013, alleging an onset date of November 16, 2013. Tr. 49, 217-26. Benefits were denied initially, Tr. 149-51, and upon reconsideration, Tr. 157-67. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 1, 2016. Tr. 68-104. On March 25, 2016, the ALJ issued an unfavorable decision, Tr. 49-60, and on January 24, 2012, the Appeals Council denied review. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 35 years old at the time of the hearing. Tr. 70. She has a GED. Tr. 70. She has work experience as a para-educator, in a shipping office, as a cashier and counter at a casino, and in accounting for a fruit warehouse. Tr. 72-77. Plaintiff testified she is not able to work because of symptoms from anxiety and bipolar disorder. Tr. 77. She left jobs because she would get mad at her supervisor or a coworker and walk out. Tr. 84. She does not go anywhere by herself due to her

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses only Plaintiff's first name and last initial.

symptoms. Tr. 82. She sleeps a lot and misses work when she is depressed. Tr. 82, 258. Plaintiff reports she is unable to handle stressful situations, is impulsive, and cannot handle confrontation. Tr. 268. She has tried medication but has had difficulty finding something that works without side effects. Tr. 85. She sometimes drinks alcohol or smokes marijuana to reduce her anxiety. Tr. 88-89.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

ORDER ~ 3

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is

engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

ORDER ~ 5

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers

ORDER ~ 6

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since November 16, 2013, the alleged onset date.  Tr. 51.  At step two, the ALJ found that Plaintiff has the following severe impairments: depression/bipolar disorder, anxiety, and personality disorder.  Tr. 51.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 51.

The ALJ then found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> Can perform simple, routine tasks and follow short, simple instructions.  She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period of less than thirty days.  She can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required.  She can deal with occasional changes in the work environment and can do work that requires no contact with the general public to performer the work tasks.

Tr. 53.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 71.  After considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are jobs that exist in significant numbers in the national economy

ORDER ~ 7

that Plaintiff can perform such as production assembler, electronics worker, or garment sorter. Tr. 59. Therefore, at step five, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2008, through the date of the decision. Tr. 60.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom complaints; and

2. Whether the ALJ properly considered lay witness testimony. ECF No. 14 at 2.

## DISCUSSION

### A. Symptom Testimony

Plaintiff contends the ALJ improperly considered her symptom testimony. ECF No. 14 at 5-19. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could

ORDER ~ 8

reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

ORDER ~ 9

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible. Tr. 54-57.

First, the ALJ found the medical records are "minimal" and do not document the degree of impairment alleged. Tr. 54. The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853,857 (9th Cir. 2001); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The Court disagrees that the records in this case are "minimal." In nearly every month since the alleged onset date, Plaintiff attended at least one mental health treatment appointment and during most months, Plaintiff attended multiple treatment sessions. *See* Tr. 433, 444, 475 (three appointments in February 2014); Tr. 466, 469, 471 (three appointments in March 2014); Tr. 459, 462, 464 (three appointments in April 2014); Tr. 451, 453, 457 (three appointments in May 2014); Tr. 488, 490 (two appointments in June 2014); Tr. 496-97 (two appointments in August 2014); Tr. 501-02 (two appointments in October 2014); Tr. 507, 516 (two appointments in November 2014); *see also* Tr. 523-24, 530, 535, 545, 547, 553,

ORDER ~ 10

558, 559, 562, 564, 566, 570-71, 575-76, 577, 581, 585, 586, 590-92, 596-97, 601-03, 607 (multiple appointments monthly in January, March, June, July, August, September, October, and November 2015); *see additionally* Tr. 437, 447, 493, 516, 525, 538-39, 608 (appointments in December 2013, January, July 2014, and December 2014, and February, April, May and December 2015). This is not "minimal" treatment or a "minimal" record. Indeed, the ALJ acknowledged Plaintiff "consistently sought treatment for longstanding psychiatric impairment" (Tr. 54) and "attended therapy appointments on a regular basis," (Tr. 57), but contradictorily asserted she "has a longstanding history of mental health impairments for which she has sought somewhat sporadic treatment" (Tr. 57). The ALJ's characterization of the treatment record is not accurate.

Furthermore, the ALJ's characterization of the record as "minimal" reflects a tendency to minimize the record. The ALJ stated that treatment notes indicate Plaintiff's suicide attempt in November 2013 (just prior to the alleged onset date) was "mild in nature." Tr. 55 (citing Tr. 413). While the record states she has a "mild overdose," it further states "she also cut her wrists." Tr. 413. The implication that Plaintiff's suicide attempt was "mild" based on the ALJ's selective discussion of the record is misleading.

Additionally, the ALJ found that records after May 2015 "show little significant change in the claimant's condition" and cited largely positive findings from September, November, and December 2015. Tr. 56 (citing 581-82, 604, 609). However, the ALJ failed to acknowledge records from July and August 2015

ORDER ~ 11

indicating Plaintiff was in distress.   During a July medication management appointment, Plaintiff reported mood swings and constant irritable mood and her mental status exam noted a sad mood and congruent affect, impaired memory, concentration and attention, and only fair insight and judgment.  Tr. 553-54. During a counseling session a week later, Plaintiff had an anxious mood and affect and she became quite anxious, tearful, withdrawn, and sullen when discussing entering group therapy.  Tr. 558.  Several days later, Plaintiff made another suicide attempt by overdose.  Tr. 688.  In August, Plaintiff endorsed depression, anxiety, anger/irritability, difficulty sleeping, and difficulty concentrating.  Tr. 566.  Later in the month, she reported an improved mood but feelings of guilt, poor concentration, and low energy.  Tr. 571.  She was medication compliant but had severe side effects, so her medication was changed.  Tr. 571.  Even if the ALJ accurately characterized the record to this point (and the Court does not so find), the failure to acknowledge the records leading up to and after the July 2015 suicide attempt and characterization of  that period of time as one of "no significant change" is a significant oversight.

The ALJ found that while the record reflects "some waxing and waning of symptoms," her mental status exam results are "largely unremarkable" and show "little impairment."  Tr. 54, 57.  The ALJ cited a number of mental status exam results to demonstrate they were "unremarkable" or "unchanged," but minimized or failed to acknowledge negative findings.  Tr. 55-56.  For example, the ALJ cited May 27, 2015 mental status exam findings showing Plaintiff was fully oriented,

ORDER ~ 12

with logical and linear thought form, and good insight and judgment.  Tr. 56 (citing

Tr. 539).  However, the record indicates several abnormal mental status exam

findings:  Plaintiff's mood was sad, her affect was congruent and constricted, and

her memory, concentration, and attention were impaired.  Tr. 539-40.  The ALJ

failed to note a mental status exam in July 2015with the same findings.   Tr. 553.

Further, many mental status exams indicate Plaintiff's mood was anxious or

depressed with typically congruent affect or other negative findings.  *See* Tr. 459

(tearful, abnormal motor activity secondary to anxiety, passively cooperative,

insight and judgment poor, mood not doing well and affect congruent), 466

(abnormal motor activity, mood anxious and depressed, insight and judgment

poor), 471 (abnormal motor activity secondary to anxiety),  493 (mood is increased

depression, thought content is worried, insight fair), 508 (downcast, expresses

depression and anxiety, sleeping 20 hours a day, slow speech, decreased energy

and motivation), 520 (improving but mood remains depressed with a congruent

affect), 561(affect subdued, eye contact fair, insight and judgment fair), 582 (mood

not very good, affect congruent, eye contact fair, insight and judgment fair), 587

(cooperative but tearful, mood not very good, affect congruent, eye contact fair,

insight and judgment poor).  Tr. 587.  Thus, the ALJ's characterization of

Plaintiff's mental status exam generally as "unremarkable" and part of a minimal

record is not supported by substantial evidence.  This is not a clear and convincing

reason for rejecting Plaintiff's symptom testimony.

Second, the ALJ found that while Plaintiff attends therapy regularly, "she has irregularly taken her medication." Tr. 54. Unexplained or inadequately explained non-compliance with treatment may reflect on a claimant's credibility. *See Molina*, 674 F.3d at 1113-14; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility). The ALJ observed that in May 2015, Plaintiff reported "really bad" irritable mood and anxiety, but she had stopped all medications a couple of weeks after starting them. Tr. 56, 539. This is the only record cited by the ALJ in support of the conclusion that Plaintiff "irregularly" took her medication.

Although Plaintiff reported stopping her medication, the ALJ did not consider her explanation for doing so. An ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment." Social Security Ruling (SSR) 16-3p at *8 (March 24, 2016), *available at* 2016 WL 123794. Symptom claims are undermined "by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is

not believable, can cast doubt on the sincerity of the claimant's pain testimony."
*Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted).

The ALJ failed to note that Plaintiff explained she discontinued her medications due to side effects. Tr. 559. In March 2015, she had been medication adherent but was experiencing side of dizziness, vaginal bleeding, and bruising. Tr. 535. In May 2015, she reported that she had stopped all medications the previous month. Tr. 539. Her headaches and bleeding had resolved since being off the medications although her mood was irritable and anxiety increased. Tr. 539. In July 2015, she said she continued to take Lorazepam although she did not find it to be helpful and reported that she "self discontinued all medications except the lorazepam a few months ago due to being frustrated with the side effects." Tr. 559. The ALJ failed to address the side effects Plaintiff experienced as justification for discontinuing her medication.

Indeed, the record indicates side effects from medication have been an ongoing barrier to Plaintiff's treatment. Tr. 453 ("Many of her symptomatic concerns have not improved in the past mainly due to side effect issues with most medications."), 457 (not stable on medication), 459 (medication making her feel ill), 464 (second antidepressant made her feel sick), 490 ("has not been on a successful medication" and "struggles with side effects"), 493 (many side effects from new medication), 530 (list of medications attempted and side effects), 535 (medication adherent with side effects of dizziness and bleeding), 571 (medication compliant with side effects of nausea and sedation), 573 ("She has had many

ORDER ~ 15

medications give her side effects and appears to be very sensitive."), 577

(medication compliant, medication adjusted due to side effects), 584 ("every mood

stabilizer documented to have caused some form of an adverse effect").

Plaintiff also observes that her difficulty in maintaining treatment may be

attributable to her mental health impairments. ECF No. 14 at 16. One provider

noted that Plaintiff's borderline personality disorder "is a problem for her

treatment. She seems to be attributing unrelated symptoms as side effects of

medications." Tr. 588. Similarly, "Courts in this circuit have noted on multiple

occasions that noncompliance with treatment is consistent with a diagnosis of

bipolar disorder." *O'Neill v. Berryhill*, No. C17-1700 BHS, 2018 WL 2316223, at

*4 (W.D. Wash. May 22, 2018) (citing *Winter v. Berryhill*, 711 Fed.Appx. 847,

851 (9th Cir. 2017) (finding bipolar claimant's noncompliance with treatment did

not undermine her claimed level of disability, "as noncompliance with treatment

by individuals with bipolar disorder is consistent with their diagnosis"); *Brewes v.

Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012) (stating that

claimant's difficulty following through with treatment was "entirely consistent"

with her impairments from bipolar disorder, depression, anxiety, and

agoraphobia)).

Based on the foregoing, the ALJ's conclusion that Plaintiff's symptom

claims are undermined by her noncompliance with medication was not reasonable.

Plaintiff was engaged in regular treatment, tried numerous medications, and

experienced significant side effects. Her diagnoses of borderline personality

ORDER ~ 16

disorder and bipolar disorder may also be contributing factors to any noncompliance with medication, which was not considered by the ALJ. In this case, the ALJ's finding that Plaintiff "irregularly" took her medication is not supported by substantial evidence, and this is not a clear and convincing reason to reject her symptom claims.

Third, the ALJ found Plaintiff's activities are inconsistent with her allegations of impairment. Tr. 54, 57. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ observed that although Plaintiff complained of a disabling impairment which makes it difficult for her to leave her home, the record is "replete" with mentions of going drinking with friends, camping, fishing, and

hiking. Tr. 57 (citing Tr. 530, 539, 592, 660). The ALJ "gave particular weight" to the fact that Plaintiff homeschools her son who is in the seventh grade and is disabled. Tr. 54, 57. The ALJ said, "[w]hile she attempted to minimize this fact at her hearing, it suggests a much higher degree of functioning than she now claims and is also a situational factor unrelated to her impairments that would make it difficult for her to pursue employment." Tr. 57.

The ALJ's characterization of Plaintiff's activities overstates their frequency and reflection of Plaintiff's abilities. While Plaintiff on one occasion mentioned "she has been drinking more lately going out with her friends," Tr. 530, when questioned about it at the hearing she stated she went out "occasionally" and the only way she could manage it was to drink alcohol at home beforehand. Tr. 87-88. With regard to camping, hiking, and fishing, Plaintiff stated she spent time camping and fishing "and staying away from people" and did so in order to stay busy. Tr. 545, 553. She went out with a hiking group on one occasion because she "loves hiking but felt she didn't want to be there. 'I like getting away from everyone and not having to deal with things and other people.'" Tr. 530. These qualifications regarding her activities are consistent with Plaintiff's allegations but were not considered by the ALJ.

Similarly, the ALJ's finding regarding homeschooling overstates the record. Plaintiff's son is autistic, Tr. 581, and Plaintiff receives support from her mother in caring for him, Tr. 507. The record indicates that she "is engaged in her son's home schooling requiring a good deal of energy and planning for it on her part,"

ORDER ~ 18

but she was sleeping 20 hours a day and experiencing decreased energy and motivation. Tr. 508. Plaintiff testified that she helps her son as much as she can, "but it's hard because . . . the last few months I've been going through my depression, it's been like I sleep a lot." Tr. 82. She testified that her daughter usually helps her son after she gets home from school at 11:30. Tr. 82. Without any basis, the ALJ asserted that Plaintiff "attempted to minimize" her homeschooling efforts at the hearing, but the ALJ did not acknowledge that Plaintiff's testimony is supported by her statements in the record.

Even if the ALJ's findings regarding Plaintiff's daily activities could be considered reasonable, the ALJ's other errors in interpreting the record make the ALJ's characterization of Plaintiff's daily activities suspect, as well. Based on the foregoing, this is not a clear and convincing reason to reject Plaintiff's symptom claims.

**B. Lay Witness Testimony**

Plaintiff contends the ALJ improperly rejected the testimony of Plaintiff's brother. ECF No. 14 at 19-21. Plaintiff's brother testified that he lives a few blocks away. Tr. 91. He testified that he witnessed Plaintiff have a blackout or "seizure-like" event a year or more before the hearing. Tr. 93. It lasted about six hours and he witnessed convulsions and shaking. Tr. 93. She was halfway coherent but it was hard to get her attention. Tr. 93. He testified that when she has a depressive episode, she stays in her room or the bathroom and will not come out, will not socialize, will not answer texts or phone calls, and will give the "silent

treatment" to others. Tr. 93-94. She might not come out for days. Tr. 94. He testified that he has observed her having "impulse control" problems and breaking every dish in her house. Tr. 93. He had to fix her computer because she broke it during an episode. Tr. 93. She cannot be calmed down and throws and breaks things, slams doors, and ends relationships when she is in that state. Tr. 94. Her brother testified he has witnessed such behavior because Plaintiff's children call him when they need help. Tr. 94.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). The fact that a lay witness is a family member is not proper grounds for rejecting his or her testimony. *Smolen*, 80 F.3d at 1289; *see Dodrill*, 12 F.3d at 918-19; *see also Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).

The ALJ gave little weight to the testimony of Plaintiff's brother. Tr. 58. First, the ALJ found the symptoms of Plaintiff "often being unable to leave her room and convulsing due to her impairments . . . are not reflected in the treatment notes." Tr. 58. The ALJ noted Plaintiff "reports she leaves the house regularly" and attends medical appointment on time. The Court notes that Plaintiff's brother

did not testify that Plaintiff is "often" unable to leave her room, only that she will sometimes not leave her room for days at a time during a depressive episode. Tr. 93-94. Furthermore, the ALJ overlooked at least one corroborating record from December 2013 indicating Plaintiff reported that during depressive episodes she hides in her room and sleeps much of the time. ECF No. 14 at 21; Tr. 439. Plaintiff also points out she has no memory of the events surrounding her two suicide attempts, similar to the "blackouts" mentioned by her brother. ECF No.14 at 21; Tr. 437, 453, 564. While the ALJ is correct that there is no medical record of convulsive symptoms, in light of the ALJ's other oversights and overstatements regarding the record and the testimony of Plaintiff's brother, this is insufficient to constitute substantial evidence undermining his statements.

Second, the ALJ found the testimony of Plaintiff's brother appears to be based on Plaintiff's subjective complaints which the ALJ found to be not credible. Tr. 58. The basis for the ALJ's finding is unclear, as Plaintiff's brother testified that he witnessed the symptoms he testified about. Tr. 91-95. Even if the ALJ is correct that Plaintiff's brother's testimony is based on Plaintiff's subjective complaints, this is not a legitimate basis for rejecting that testimony because as discussed *supra*, the ALJ's reasons for rejecting Plaintiff's subjective complaints were not legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

ORDER ~ 21

The ALJ must reconsider Plaintiff's symptom complaints and the testimony of Plaintiff's brother. Because the ALJ's overlooked or selectively considered portions of the treatment record favorable to Plaintiff, and because there is no examining or treating psychological opinion regarding Plaintiff's limitations in the record, on remand the ALJ shall obtain testimony from a medical expert who has the opportunity to review the entire record and render an opinion regarding Plaintiff's functional limitations. Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 19, is DENIED.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** July 16, 2019.


_____*s/ Fred Van Sickle*_____
FRED VAN SICKLE
Senior United States District Judge